**RECEIVED**

1/26/2024 SMB

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

24-cv-806
Judge Coleman
Magistrate Judge McShain
PC 8
PC SCAN
RANDOM/CAT 3

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

Joseph Bayne
# B763556

SCANNED AT STATEVILLE CC and E-mailed
1-26-24 by ___ 28 pages
date        initials   No.

New Case

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.                                  Case No: _____
                                     (To be supplied by the Clerk of this Court)

Dr. Martine Henze, Dr. Bautista,
P.A. Helen Bruckner, Wexford
Health Sources Inc., Unknown
Wexford Health Sources Inc.,
Employees (Collegial Review, Utilization
Management Unit) (In Their Official
and Individual Capacity
while acting Under Color
of State Law).

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**CHECK ONE ONLY:**

___  **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
     U.S. Code** (state, county, or municipal defendants)

___  **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
     28 SECTION 1331 U.S. Code** (federal defendants)

___  **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

Jury Trial Demanded

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**I.    Plaintiff(s):**

A.    Name: Joseph Bape

B.    List all aliases: N/A

C.    Prisoner identification number: Reg. # B76256

D.    Place of present confinement: Stateville Correctional Ctr.

E.    Address: P.O. Box 112 Joliet, Illinois 60434

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

**II.    Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A.    Defendant: Marlene Henze

Title: Medical Director

Place of Employment: Stateville Correctional Ctr.

B.    Defendant: Dr Bautista

Title: Past Medical Director/Doctor

Place of Employment: Stateville Correctional Ctr.

C.    Defendant: Helen Bruckner

Title: Physician Assistant Nurse Practitioner

Place of Employment: Stateville Correctional Ctr.

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 9/2007

II. Defendants:

D. Defendant: Wexford Health Sources, Inc.
   Title: Health Care Provider, Illinois Department
   of Corrections
   Place of Employment: Illinois

E. Defendant: Unknown Wexford Health Sources, Inc.
   Employees
   Title: Collegial Review, Utilization Management
   Unit)
   Place of Employment: Wexford Health Sources, Inc.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III.   **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.   Name of case and docket number: _____ N/A _____

_____

B.   Approximate date of filing lawsuit: _____

C.   List all plaintiffs (if you had co-plaintiffs), including any aliases: _____

_____

_____

D.   List all defendants: _____

_____

_____

E.   Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____

F.   Name of judge to whom case was assigned: _____

_____

G.   Basic claim made:_____

_____

_____

H.   Disposition of this case (for example:  Was the case dismissed?  Was it appealed? Is it still pending?): _____

_____

_____

I.   Approximate date of disposition: _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT.  REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE.  CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## Complaint

Plaintiff, Joseph Bape, by and through his attorney(s), (                    ) complains of Defendants Marlene Henze, Dr. Baptista, Helen Bruckner, Wexford Health Sources, Inc., and Unknown Wexford Health Sources, Inc. Employees (Collegial Review, Utilization Management Unit, and States as follows:

## Introduction

This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution, and seeking damages and injunctive relief against the Defendants for committing acts under color of law with the intent and for the purpose of 'depriving,' 'delaying,' and the 'Continuing Violation,' of blatantly denying Plaintiff adequate medical care, therefore being deliberately indifferent to a serious medical need (in violation of his rights guaranteed by the Eighth Amendment of the United States Constitution.

Plaintiff has been complaining to Defendants about the severe pain that he has been suffering in his Left Total Shoulder Arthroplasty because of a broken screw from the prosthesis, that was

discovered after a CT Scan on 3/11/22. Plaintiff has been complaining for years and Defendants failed to provide adequate medical care or access to constitutionally adequate medical care.

On 12/5/22, was the last Ancillary Procedure in CT imaging of Plaintiff's Left Shoulder Arthroplasty. The CT imaging found that: "There is redemonstration of a fractured screw fragment embedded within the bony glenoid." Orthopedic surgeon (specialists) agreed that Plaintiff needed follow up care and surgery. Yet defendants have continued to 'delay; deny,' and embark on a 'Continuing, Harm, Wong Violation; the treatment that specialists already determined Plaintiff needs. To this day, Plaintiff has yet to receive any meaningful treatment for his seriously damaged left shoulder arthroplasty. As a result, Plaintiff continues to suffer agonizing pain, and impairment with daily activities like holding any object with his left hand and even having to stop working as a Dietary Cook.

Jurisdiction and Venue

This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper under 28 U.S.C. § 1391 (b). On information and belief, one or more defendants reside in

-5-

this judicial district, and a substantial, if not all portion of the events giving rise to the claims asserted herein occurred within this district

## Parties

Plaintiff, Joseph Bayer, is in the custody of the Illinois Department of Corrections (IDOC). At all time relevant to the events at issue in this case, Plaintiff was housed at Stateville Correctional Center (SCC).

Defendant, Marlene Henze, at all times relevant to to her involvement in this case, was the Medical Director at SCC, an employee of and final policymaker for Wexford Health Sources, Inc. (Wexford), and was responsible for the implementation, oversight and supervision of policies and practices at SCC. Defendant Henze is sued here in her individual capacity. At all times relevant to the events at issue in this case, Defendant Henze was acting under color of law and within the scope of her employment.

At all times, relevant to his involvement in this case, Defendant Bautista was a physician at SCC, and employee of and final policymaker

for Wexford, and was responsible for the implementation, oversight, and supervision of policies and practices at SCC. Defendant Bautista is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Bautista was acting under color of law and within the scope of his employment.

At all times relevant to her involvement in this case, Defendant Bruckner was a Physician Assistant at SCC, and is responsible for implementation, oversight, and supervision of policies and practices at SCC. Defendant Bruckner is sued in her individual capacity. At all times relevant to the events at issue in this case, Defendant Bruckner was acting under color of law within the scope of her employment.

At all times relevant to their involvement in this case, Defendant Unknown, Wexford employees (Collegial Review, Utilization Management Unit) were responsible for the implementation, oversight, and approval of outpatient care, with policies and practices at SCC. These Defendants are being sued in their individual capacity. At all times relevant to the events at issue in this case, Defendants Unknown Wexford

employees' were acting under the color of law and within the scope of their employment.

Defendant Wexford Health Serces, Inc., is a corporation transacting in Illinois. Wexford pursuant to a contract with the State of Illinois, is a healthcare provider for IDOC prisons throughout the State. At all times relevant to the events at issue in this case, Wexford was responsible for the implementation oversight, and supervision of policies and practices at SCC and the IDOC generally. As an agent of the IDOC, Wexford was at all times relevant to the events at issue in this case acting under color of law by and through its lawful agents, including the individual Defendants and other unknown healthcare employees at SCC.

## Allegations

Plaintiff has been suffering severe pain in his Left Shoulder for various years, after undergoing a Total Left Shoulder Arthroplasty on 06/5/15. After surgery, Plaintiff proceeded for approximately 4 months with physical therapy at SCC.

Approximately March 2016, Plaintiff began experiencing sharp pain to the operated shoulder. Plaintiff began complaining of the pain to healthcare unit (HCU) Plaintiff put in sick calls to see doctors. It took months to be seen by a doctor, who only did a cursory look and just prescribed the fix-it-all of SOC Ibuprofen. It took up to approximately the summer of 2019, that Plaintiff was sent to the University of Illinois Medical Center at Chicago, and Orthopedic Specialist Dr. Benjamin Goldberg detected from a CT scan & MRI that a screw from prosthesis was loose. Gave Plaintiff option and both Plaintiff and Dr. Goldberg agreed that surgical intervention would be had.

Throughout all this time Plaintiff wrote various letters to Defendant Herzo, Defendant Bruckner specifically about the recommendation by orthopedic specialist to have surgery to repair a broken screw detected on a follow-up CT scan on 3/11/22, and 11/5/22.

Despite orthopedic specialist recommendation to perform surgery, as agreed by

6

Plaintiff, once arriving back at the prison, the Defendants 'deny', 'delay' and 'Continue' not allowing Plaintiff to receive necessary surgical intervention.

Despite recommendation from orthopedic surgeons to perform surgery to fix or remove broken screw from prosthesis, Plaintiff has not received no medical evaluation or treatment in-regard to have surgery, as he suffers endlessly excruciating pain.

During all this time Plaintiff continues to complain, and Defendants do nothing. Each letter and each sick call has been ignored nor unanswered.

Plaintiff has also made oral requests for medical care to nurses administering medication to individuals in custody, in his living unit. Each time the nurses told him to submit another sick call request and refused to provide him medical treatment or access to medical treatment.

To date, Plaintiff has not received any care for his severely damaged left shoulder arthroplasty. This is directly attributable to Defendants deliberate indifference to his objectively serious medical needs, and has forced him

—10—

to suffer unnecessary agonizing pain and impairment with daily activities like washing his body, drinking a cup of coffee, or even the simple putting on socks. Moving while laying down, is painful.

Defendants had notice of Plaintiffs medical needs and the seriousness of his medical needs, and knew the risk of harm to Plaintiff, if he did not receive appropriate medical care. Despite that knowledge, Defendants failed to provide him with any proper medical care or access to medical care, in violation of the Eighth Amendment to the United States Constitution.

As a result of Defendants unjustified and unconstitutional conduct, Plaintiff is experiencing pain, suffering, emotional distress, and injury.

The Defendants misconduct is objectively unreasonable and is undertaken intentionally, with malice, and/or with reckless indifference to Plaintiffs rights.

Alternatively, Defendants were deliberately indifferent to Plaintiffs objectively serious medical needs, and their actions were undertaken intentionally, with malice and/or with reckless indifference to his

rights.

(1) Plaintiff's harm and injury is the proximate cause of policies and practices of Defendants.

Defendant Henze, with full knowledge of Plaintiff's serious medical issue, has blatantly ignored Plaintiff's daily suffering, and has done nothing meaningful to assist Plaintiff receive the surgery he needs. Defendant Henze has reviewed Plaintiff's entire medical record as it pertains to left shoulder arthroplasty and was therefore aware of the seriousness of his medical condition, but failed to take any corrective action, thus being deliberately indifferent, in clear violation of Plaintiff's rights. Delaying, Denying, and Continuing Violation, is in turn with Wexford's widespread policy and practice to, resort to an easier course of treatment, that they know is ineffective, but appropriate for their cost-cutting policies.

Defendant Buehner, with full knowledge of Plaintiff's serious medical issue, has opted to rubber stamp Outpatient Progress Notes, and though Defendant Buehner

– 12 –

did not completely ignore Plaintiffs pain, her
choice of the easier and less efficacious
treatment for an objectively serious
medical condition amounts to deliberate
indifference, thus violating Plaintiffs rights.
This Defendant in line with policy and
practices from Wexford, of the doctrine
of continuing violation, wrong, and harm,
has prolonged Plaintiffs agony by not
recommending and insisting that he
receive necessary surgery. Every day that
she, the Defendant has delayed Plaintiff
from receiving adequate medical care,
she has been deliberately indifferent to
Plaintiff's serious medical needs.

Defendant Bautista saw Plaintiff as he
was acting as temporary medical director,
and knew of Plaintiffs serious injury and
the pain on his left shoulder. Defendant
told Plaintiff he would recommend a
revision of shoulder surgery back in
2020. Defendant guaranteed Plaintiff
he would follow up, however Defendant
opted to do nothing to ensure that
Plaintiff receive adequate medical care
and access to medical care, Thereby

-13-

acting with deliberate indifference. Plaintiff wrote Defendant, however, Defendant ignored and never answered Plaintiffs right to receive necessary care/surgery. Thus Defendant had oversight and could've provided the care and arrange Plaintiff to be treated in outside facilities, as mandated by Plaintiffs serious medical issue, but instead fell in line with the wide-spread policies by Wexford to routinely deny Plaintiff or prisoners of medical care or access to medical care by specialists in a better position to diagnose and/or treat serious medical needs as the Plaintiffs left Shoulder Arthroplasty screw being fractured from prosthesis, thus being deliberately indifferent to Plaintiffs constitutional rights.

Defendant Wexford has a long standing practice of routinely denying individual in custody medical care and access to medical care. As the healthcare provider, Wexford is responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding the provision of medical care

14

to individuals, in custody, in IDOC. Defendant Wexford maintains a policy of refusing to provide medical treatment because of an effort to cut costs. Rather than referring patients who suffer from serious medical issues as Plaintiff to outside specialists, Wexford simply denies them treatment, delays, and allow the continuing violations, wrong, and harm to Plaintiff as Plaintiff has experienced in his suffering. Wexford has done nothing to ensure that Plaintiff receive adequate medical care, thereby acting with deliberate indifference. Wexford has implemented widespread policies and practices at SCC persuant to which individuals in custody, receive unconstitutionally inadequate healthcare, e.g., healthcare personnel commonly fail to perform adequate examinations of individual in custody with a serious medical condition; healthcare personnel fail or refuse to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary, as with Plaintiff serious medical needs. And noteworthy, Defendant Wexford employs healthcare personnel with

— 16 —

inadequate training, qualifications, and
experience that are in charge with the
responsibility of screening and evaluate
individuals in custody complaints and
requests for medical care. These
widespread policies and practices have
harmed Plaintiff, in this way Plaintiffs
rights have been violated by this
ongoing tone of malfeasance and deliberate
indifference. Defendant Wexford has been
deliberately indifferent to this problem,
therefore, ratifying it.

Defendant's, Unknown Wexford Employees,
Collateral Review, Utilization Management
Unit routinely deny, delay, and continually
harm individuals in custody, as Plaintiff,
as they sit on a recommendation for
long periods of times before making any
determination of medical care intended
to address serious medical needs,
in line with Wexford's widespread
policy + practice of routinely denying
or allowing access to medical care
by specialists who are in a better
position to diagnos, treat and help
concerning surgical issues as Plaintiff

requires. These Unknown Unnamed Employees' have allowed these widespread policies and practices to flourish, by continuing to deny, delay, and continually harm those who need immediately medical treatment. Their Unit has harmed Plaintiff by not ensuring that he see orthopedic specialists who recommended Plaintiff receive left shoulder surgery to remove fractured screw from previous surgery, thus being deliberately indifferent.

Defendants continue to this day to refuse to provide Plaintiff with constitutionally adequate medical care and refuse to provide Plaintiff access to constitutionally adequate medical care, despite their actual knowledge of Plaintiff's serious medical needs and their appreciation of the risk of continuing harm, they their refusals to act pose to Plaintiff. Accordingly, Plaintiff seeks injunctive relief from this Court to stop the continuing constitutional violation.

In this complaint, the action of all the Defendants breached the duty of care owed to individuals in custody, in their care. They did so by negligently ignoring Plaintiff's requests for medical attention. Alternatively, the actions of Defendants were willful, and wanton, in that they demonstrated an utter indifference to the safety of others. Defendants were aware that an injury would probably result from the above-described course of action and recklessly disregarded the consequences of those actions, as Plaintiff continued to suffer needlessly. Defendants action were undertaken willfully and wantonly, and/or with reckless indifference or conscious disregard for Plaintiff's health.

Defendants action and wanton conduct, Plaintiff has suffered injuries, including excruciating pain, suffering, and emotional distress.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## V.    Relief:

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

That Court grant Injunctive Relief so that Plaintiff
can recieve needed surgery; and that Plaintiff
recieve Compensation for Defendants
malfeasance; and any thing Court deems
necessary and fitting

VI.    The plaintiff demands that the case be tried by a jury.  ☑ YES  ☐ NO

### CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this _____ day of _____, 20_____

_____
Joseph Boyce
(Signature of plaintiff or plaintiffs)

_____
Joseph Boyce, Boyce, Joseph
(Print name)

_____
B76356
(I.D. Number)
Stateville C.C.

_____
P.O. Box 112

_____
Joliet, IL. 60434
(Address)

    Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]



**Wexford Health**
SOURCES INCORPORATED

## NOTICE OF CLAIM AUTHORIZATION NUMBER

To:       HEALTHCARE UNIT
From:     Utilization Management
Date/Time:  12/15/2021 / 08:48:31

Inmate Name:  JOSEPH BOYCE
Inmate Number:  B76356
Date of Birth:  09/29/1968
Site:  STATEVILLE CC
Service:  99213-OFFICE O/P EST LOW 20-29 MIN
Authorization No:  229062469

Service is Authorized.

Comments:   12-14-21 Ortho Shoulder F/U authorized for a patient s/p L total shoulder arthroplasty
10/2015 s/t arthritis. Chronic progressive pain and stiffness to L shoulder and neck.
Seen by Ortho 10-27-17; noted possible infection vs loosening of hardware. CT
done 5-24-18 showing a L acromial stress fracture. Now with increased pain. Pain is
constant and increased with vibration such as loud vocalization. Seen by Ortho 8-24-2
recommended revision of shoulder. Repeat CT L Shoulder and F/U needed prior to
surgery. _____ **Auth for Ortho Shoulder F/U at UIC**

-------------------------------------------------------------------------------------

INFORMATION CONTAINED IN THIS DOCUMENT IS PRIVILEGED AND CONFIDENTIAL

Wexford Health Sources
Phone: 877-939-2884 -or- 800-353-8384
Fax: 412-937-9151

UI HOSPITAL
833 S Wood St, Suite B52
CHICAGO IL 60612-7232

Boyce, Joseph
MRN: 081082347, DOB: 9/29/1968, Sex: M
Visit date: 3/11/2022

03/11/2022 Ancillary Procedure in CT Imaging

## Medication List

### Medication List

This report is for documentation purposes only. The patient should not follow medication instructions within.
For accurate instructions regarding medications, the patient should instead consult their physician or after visit summary.

#### Active at the End of Visit

None

#### Stopped in Visit

None

**RECEIVED**

AUG 2 9 2022

ADMINISTRATIVE
REVIEW BOARD

## Imaging

### Imaging

#### CT Shoulder Without Contrast Left (Final result)

CT Shoulder Without Contrast Left

Resulted: 03/12/22 0921, Result status: Final result

Ordering provider: Salma Mumuni, MD 03/11/22 0943
Resulted by:
Ukamaka Chidiogo Atueyi, MD
Lucas Sage, DO
Performed: 03/11/22 1058 - 03/11/22 1112
Resulting lab: FOUNDATION RADIOLOGY SYSTEM
Narrative:

Order status: Completed
Filed by: Interface, Radiology Results In 03/12/22 0924

Accession number: 1001493168

EXAMINATION: CT SHOULDER WITHOUT CONTRAST LEFT.

DATE: 3/12/2022 at 10:56 hours.

COMPARISONS: Multiple prior CTs of the left shoulder most recently dated 8/20/2020. Multiple prior radiographs, most recently dated 10/25/2021.

INDICATION: Shoulder replacement, loosening suspected

TECHNIQUE: Noncontrast helical CT data were acquired through the left shoulder. Soft tissue and bone windows were reviewed in 3 planes.

FINDINGS: There is redemonstration of a left reverse shoulder arthroplasty, in similar alignment compared to prior studies, including slightly anteverted positioning of the glenoid component. There is redemonstration of a fractured screw fragment embedded within the bony glenoid. Compared to the most recent prior CT, there is interval increase in the degree of osteolysis and remodeling involving of the bony glenoid surrounding the glenoid component of the arthroplasty. Hardware alignment is grossly similar compared to the 8/20/2020 CT with redemonstration of anteversion of the glenoid head component.

The humeral component of the arthroplasty remains intact. Compared to the 8/20/2020 examination, there is increased lucency/gap between the humerus bone and articular portion of the humeral component prominent measuring up to 1.6 cm, previously 0.9 cm (series 401 image 28).

There are similar degenerative changes at the acromioclavicular joint as well as redemonstration of an os acromiale.

Previously described pulmonary micronodule in the left upper lobe is not visualized and may be outside the field-of-view of this study.

Impression:
1. Redemonstrated reverse shoulder arthroplasty with increased osteolysis of the bony glenoid. Redemonstration of a fractured screw originating from the glenoid component.
2. Increased osteolyses/gap between the bone in the humeral component, now measuring 1.6 cm, previously 0.9 cm.
3. Hardware alignment is similar when compared to the 8/20/2020 CT with redemonstration of anteversion of the glenoid component.
4. Os acromiale and moderate arthritis of the acromioclavicular joint.

UI HOSPITAL
833 S Wood St, Suite B52
CHICAGO IL 60612-7232

Boyce, Joseph
MRN: 081082347, DOB: 9/29/1968, Sex: M
Visit date: 10/25/2021

**10/25/2021 - Ancillary Procedure in OCC - X-Ray Imaging**

## Medication List

### Medication List

This report is for documentation purposes only. The patient should not follow medication instructions within.
For accurate instructions regarding medications, the patient should instead consult their physician or after visit summary.

#### Active at the End of Visit

None

#### Stopped in Visit

None

## Imaging

### Imaging

#### XR shoulder 2+ views left (Final result)

**XR shoulder 2+ views left**                                              Resulted: 10/26/21 1200, Result status: Final result

Ordering provider: Benjamin Goldberg, MD 10/25/21 1523          Order status: Completed
Resulted by: Shahrooz Sepahdari, MD                            Filed by: Interface, Radiology Results In  10/26/21 1203
Performed: 10/25/21 1525 - 10/25/21 1532                        Accession number: 1001409765
Resulting lab: FOUNDATION RADIOLOGY SYSTEM
Narrative:
EXAM: XR SHOULDER 2+ VIEWS LEFT

DATE: 10/25/2021 3:32 PM

INDICATION: post op

COMPARISON: 8, 20, 20

FINDINGS:
3 views of the left shoulder are obtained. There is fracture of threaded screw of the glenoid component of the left shoulder reverse TSA which is new since the previous examination. The components of prosthesis however are in anatomic alignment. The humeral component of prosthesis is intact.. There is no suggestion of prosthetic loosening. Periarticular soft tissues are unremarkable.

Impression:
There is apparent fracture of threaded screw of the glenoid component of the left shoulder prosthesis.

Otherwise unchanged and grossly unremarkable.

Electronic Signed By: Attending Radiologist: Shahrooz Sepahdari
Signed on 10/26/2021 12:00 PM
Acknowledged by: Benjamin Goldberg, MD on 11/01/21 1537

**RECEIVED**
AUG 2 9 2022
ADMINISTRATIVE
REVIEW BOARD

#### Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 24 - FS RAD | FOUNDATION RADIOLOGY SYSTEM | FOUNDATION RIS DIRECTOR | 123 Anywhere Street Madison WI 53593 | 12/11/14 1431 - Present |

#### Indications

Postoperative state [Z98.890 (ICD-10-CM)]

#### Signed

Electronically signed by Shahrooz Sepahdari, MD on 10/26/21 at 1200 CDT

UI HOSPITAL
833 S Wood St, Suite B52
CHICAGO IL 60612-7232

Boyce, Joseph
MRN: 081082347, DOB: 9/29/1968, Sex: M
Visit date: 8/24/2020

**08/24/2020 - Office Visit - Legacy in Orthopaedics and Sports Medicine (continued)**

**Clinical Notes (continued)**

**Review of Symptoms:**
Denies fever, chills, chest pain, shortness of breath, nausea, vomiting, constipation, diarrhea, headache, vision changes.

**Physical Examination:**
Physical Exam:
Gen: Well developed, well nourished, resting comfortably in no acute distress
Skin: Warm, dry
Head: Normocephalic, atraumatic
Neck: Supple, no tenderness
Eye: EOMI, normal conjunctiva
Ears/Nose/Throat: Moist mucous membranes
CV: Regular rate. Palpable radial pulses bilaterally. Brisk capillary refill <2 seconds in BUE.
Resp: Respirations are non-labored
MSK: L shoulder ROM with forward flexion to 120° left shoulder, 160° of right shoulder. Abduction to 140° on left 180° on the
right. Pain with strength testing of abductor. Grip strength 5/5, symmetric. Sensation intact to light touch in
median/ulnar/radial/axillary distributions.
Neuro: Alert and oriented to person, place, time and situation. Normal speech observed. No facial droop. Cranial Nerves II-XII are
grossly normal
Psychiatric: Cooperative, Appropriate mood and affect, normal judgment

**Imaging:**
Reviewed bone scan and CT imaging from Sept 2019. Mild lucency, possible osteolysis around glenoid component. However, no
significant subsidence detected. No evidence of infection.
New CT of left shoulder obtained last month demonstrates moderate lucency and osteolysis around the glenoid components as
well as increased spacing between the humeral plate and humerus.

**Assessment and Plan:**
Patient is a 51-year-old male status post reverse total shoulder arthroplasty who presents with pain, worse with lifting activities.
It has been a long-standing issue for the patient. Upon last exam dated 07/31/20 there was no fluid from aspiration of
fluoroscopy to be sent for culture and inflammatory markers provided did not support an infectious etiology ( ESR is 13, CRP 5.2
CBC 4.7). Newley obtained CT and XRs consistent with loosening of implanted hardware. Discussed with patient that he may
either live with his current pain or unfortunately with half ago extensive revision procedures. Patient opted for surgical
intervention which may include a temporary antibiotic spacer and secondary surgery based off the presents of the hardware site
or an immediate revision prosthesis. All expected benefits, material risks, (include risks common to all surgery and risks specific
for the proposed surgery) potential adverse effects, alternate treatments and the consequences of not having the surgery were
discussed. Risks that may cause the patient to refuse surgery and specific circumstances for individual patients, such as work
responsibilities, family issues, religious beliefs and insurance coverage, were considered. Surgery tentatively planned for
10/19/2020 with Dr. Goldberg. Pt added to I-drive. Packet not yet completed.


Patient voiced understanding of treatment plan.
Dr. Goldberg was present for evaluation and agrees with plan as above.

  Mike Patetta
  Orthopaedic Surgery Resident PGY1
  pgr: 1066
  On call pager (post 5pm and weekends) 1712


**Signature Line**
Electronically Signed on 08/24/20 05:30 PM

_____
Patetta MD, Michael

**RECEIVED**

AUG 2 9 2022

ADMINISTRATIVE
REVIEW BOARD