**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH BOYCE, | ) | |
| | ) | Case No. 24-cv-00806 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| MARLENE HENZE, M.D., | ) | |
| CATALINO BAUTISTA, M.D., and | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joseph Boyce brings this action against Marlene Henze, M.D. ("Dr. Henze"), Catalino Bautista, M.D. ("Dr. Bautista"), and Wexford Health Sources, Inc. ("Wexford") (collectively, "Defendants"), for violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983 *et seq.* Boyce claims that Defendants were deliberately indifferent to his medical needs by neglecting to provide timely and adequate medical care for his left shoulder pain.

Presently before the Court is Defendants' motion for summary judgment on the issue of Boyce's failure to exhaust his administrative remedies [62]. For the following reasons, the Court denies Defendants' motion.

## I. Background

### a. *Prison Litigation Reform Act ("PLRA") and Grievance Procedures*

The Prison Litigation Reform Act ("PLRA") provides:

> "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The Supreme Court held that this provision "requires proper exhaustion" of available prison grievance procedures, meaning a prisoner "must complete the administrative review process in accordance with

1

the applicable procedural rules … as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

Grievance procedures are defined by state law. *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011). The relevant portions of the Illinois Administrative Code state that an inmate must submit a written grievance within 60 days after the discovery of the incident, occurrence, or problem. 20 Ill. Admin. Code § 504.810(a). Grievances must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* § 504.810(c). If the grievant does not know the names of the officials who engaged in the misconduct, they may still properly file a grievance by including "as much descriptive information about the individual as possible." *Id.*

The inmate must file their grievances "with the counselor or Grievance Officer," *id.* § 504.810(a), who must submit their findings and recommendations to the Chief Administrative Officer "within two months after receipt of the written grievance, when reasonably feasible under the circumstances." *Id.* § 504.830(e). If the grievant believes that the problem was not resolved, then they may appeal to the Director of the Illinois Department of Corrections (the "Director"). The Administrative Review Board ("ARB") submits its findings and recommendations to the Director, who makes a final decision. *Id.* § 504.850(a), (d)–(e).

b. *Undisputed Facts*

The Court refers to the parties' Local Rule 56.1 statements of material facts, in conjunction with the record evidence, to determine which facts may be relied upon for summary judgment. Where a party fails to cite supporting evidence to dispute a proposed fact, that fact is deemed admitted.

Joseph Boyce was an inmate at Stateville Correctional Center ("Stateville") from 2011 to September 2024, when he was relocated to Illinois River Correctional Center. While at Stateville, on

2

October 5, 2015, Boyce had a reverse total shoulder arthroplasty on his left shoulder performed at the University of Illinois Chicago ("UIC").

A few months later, in March 2016, Boyce began feeling sharp pain in his left shoulder after physical therapy. Between 2019 and 2022, Boyce was seen at UIC on several occasions for evaluation of his continued left shoulder pain. Doctors at UIC discovered a stress fracture in his left shoulder in July 2019, and a CT scan taken in August 2020 showed loosening and possible infection in his left shoulder. At that point, Boyce opted to undergo revision surgery to remedy the damage in his left shoulder. However, despite Boyce's revision surgery being approved by Wexford in September 2020, he did not return to UIC until October 2021. In January 2022, Boyce was informed that a screw in the prosthesis of his left shoulder was broken. A CT scan taken on March 11, 2022, Boyce confirmed the broken screw diagnosis. Boyce had a subsequent appointment on May 12, 2022, for leg swelling, at which the provider noted that Boyce had shoulder surgery and that a screw had broken in his left shoulder prosthesis.

Boyce submitted his only grievance on June 19, 2022, detailing how he had been waiting for a follow-up appointment at UIC for 5 months, the pain in his left shoulder is causing him difficulty in activities of daily living, and that it had been an ongoing issue by medical staff at Stateville. He marked his grievance as an emergency, but the reviewing administrative officer determined that it was not an emergency and directed Boyce to resubmit his grievance. The Grievance Department received Boyce's grievance on July 8, 2022.

After his grievance was investigated, the Grievance Department determined that the grievance was "moot" given the response from the Director of Nursing that detailed the treatment Boyce was receiving for his left shoulder. Boyce appealed the response to the Administrative Review Board ("ARB") on August 19, 2022. The ARB determined that Boyce had not submitted his grievance "in the timeframe outlined in Department Rule 504."

3

## II.     Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). In deciding whether summary judgment is appropriate, the court "may not weigh conflicting evidence or make credibility determinations." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (cleaned up).

## III.    Discussion

Defendants move for summary judgment on the basis that Boyce (1) failed to exhaust his administrative remedies prior to bringing his case and (2) did not include the names of specific Defendants nor sufficient detail in his grievance to put Defendants on notice of his complaints.

### A. Exhaustion

Defendants argue that Boyce has not exhausted his administrative remedies because he failed to file a grievance within the 60-day period provided in the Illinois Administrative Code. Because exhaustion is an affirmative defense, Defendants have the burden of proving that Boyce failed to exhaust his administrative remedies. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). Exhaustion, applied at summary judgment, requires Defendants to "demonstrate that the plaintiff … failed to

4

exhaust the applicable grievance procedures and that those procedures were available to him as a matter of law." *Jones v. Lamb*, 124 F.4th 463, 467 (7th Cir. 2024).

The core problem described in Boyce's grievance (and in his complaint in this case) is an ongoing lack of continuing care and follow-up for the damage and pain in his left shoulder. Defendants argue that Boyce discovered the problem no later than January 2022, when he learned of the broken screw in the hardware in his left shoulder. Boyce contends that the first time he had knowledge of any issue regarding his treatment was after his medical appointment on May 12, 2022. He cites progress notes from that appointment in which "it does not appear that any future treatment and care was recommended or pending" for his shoulder. If Boyce's account is true, Boyce's grievance was well within the 60-day timeframe he had to file a grievance and satisfy the exhaustion requirement.

Boyce's grievance states that he "[was] in nonstop/constant severe pain, [couldn't] rest, and ha[d] extreme pain doing normal activities. (Dkt. 63-3) at *3. Yet it had been "approximate[ly] 5 months and [Boyce] still ha[d] not gotten his follow up." *Id.* Boyce complained of the *inaction*, rather than a specific action or decision, of the medical department at Stateville. There is no definitive date upon which inaction becomes discoverable and grievable, and Boyce was not required to file a new grievance each successive day his that he did not receive treatment. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (inmates "need not file multiple, successive grievances raising the same issue … if the objectionable condition is continuing"). Viewing the facts in a light most favorable to Boyce, he realized the delay in his treatment when it had been five months since his referral and he saw no indication that he would receive a follow-up any time soon. The Court therefore finds that Defendants have not shown that Boyce failed to exhaust his administrative remedies before filing suit.

5

B. *Failure to Provide Adequate Information*

Defendants also argue that, while Boyce included the name of Dr. Henze in his grievance, he failed to identify Dr. Bautista and Wexford. Defendants admit that "[Boyce] was not necessarily required to specifically name Dr. Bautista or Wexford in order to properly exhaust," (Dkt. 62) at *7, but argue that there was nothing in the grievance that would have put any of the Defendants on notice that Boyce "ha[d] an issue with the treatment provided to him" or that they "should have done something different or anything more." *Id.* at *6–7, 8. By leaving out specific details, Defendants argue that Boyce failed to include enough information in his grievance to put Defendants on notice and to satisfy the exhaustion requirement.

A grievance need not put specific individuals on notice of potential future lawsuits against them. *Maddox*, 655 F.3d at 713 (noting that "early notice to those who might later be sued" is not the purpose of exhaustion). A "failure to include named defendants in a grievance is 'a mere technical defect' where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond." *Saffold v. Illinois Dep't of Corr.*, No. 18-cv-3301, 2021 WL 4477930, at *7 (N.D. Ill. Sept. 30, 2021*)* (Kendall, J.) (internal quotation marks and citation omitted). Further, while the Illinois Administrative Code provides instructions for filing grievances against individuals, it does not provide instructions for how an inmate should proceed against corporate entities like Wexford. *See* ILCS § 504.810(c). In cases "[w]hen the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

Under the "[n]ature of grievance" section of his grievance, Boyce marked "Medical Treatment." (Dkt. 63-3) at *2. Boyce's grievance also named "all medical parties of staff here at Stateville," *id.* at *3, and Wexford admitted in its answer to Boyce's complaint that it "has a contract with the State of Illinois to supply medical providers who administer health care at certain IDOC

6

prisons throughout the state." (Dkt. 20) at *7. Further, Boyce wrote for his "Relief Requested" that he sought "to be sent to U.I.C. for follow up" and "to have the proper surgery done concerning [his] left shoulder … A.S.A.P., within the next two months. … Grievant is in extreme pain [and] need[s] immediate action." (Dkt. 63-3) at *3. The information included in Boyce's grievance was sufficient to put Stateville officials on notice that his problem concerned the conduct of Wexford and its employees, specifically regarding the delay in his medical treatment: "This has been an ongoing issue of neglect … I can't even get medical [care] for [the] issue." *Id.*

"Illinois has not specified any particular level of detail required for inmate grievances," and a grievance is sufficient so long as it "object[s] intelligently to some asserted shortcoming." *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005) (internal citation omitted). Rather, once a prison "has received notice of, and an opportunity to correct," a problem, the inmate "has satisfied the purpose of the exhaustion requirement." *Turley*, 729 F.3d at 650. The Court finds that Boyce's grievance articulates a shortcoming and put the relevant prison department on notice of the issue, such that his grievance was not deficient.

### C. Evidentiary Hearing

Defendants maintain that, if the Court finds a question of material fact that would preclude summary judgment, the Court must "conduct[] a hearing on exhaustion and permit[] whatever discovery relating to exhaustion he deems appropriate." *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), *abrogated by Perttu v. Richards*, 605 U.S. 460, 145 S. Ct. 1793, 222 L. Ed. 2d 108 (2025). However, in *Perttu*, the Supreme Court held that "parties have a right to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment," 605 U.S. at 468, thus overruling prior Seventh Circuit practice allowing judges to resolve such disputes through bench trials under *Pavey*.

The question of when the issue of exhaustion is "intertwined" with the merits of a claim remains uncertain under Seventh Circuit precedent. *See Breyley v. Fuchs*, 156 F.4th 845, 849 (7th Cir. 2025) (declining to resolve the issue of whether exhaustion was intertwined with the merits of an inmate's deliberate indifference claim, but remanding to the district court with instructions to make such a determination). At this stage, the Court interprets this uncertainty generously in favor of Boyce, because credibility determinations are common to both exhaustion and merits issues. *See Thomas v. Truitt*, No. 1:24-cv-174, 2026 WL 280403, at *6 (N.D. Ill. Feb. 3, 2026) (Pallmeyer, J.) (finding that the issue of exhaustion was intertwined with the merits of an inmate's claim where "a fact finder would need to assess the credibility of the same witnesses on both questions"). Specifically, whether or not Boyce in fact had no knowledge of any issue before then, or had reason to suspect delay earlier, are questions of credibility. The Court cannot resolve this genuine issue of material fact, and therefore cannot resolve Boyce's case at the summary judgment stage.

## IV.     Conclusion

For the reasons stated herein, the Court denies Defendants' motion for summary judgment on the basis of failure to exhaust administrative remedies.

**IT IS SO ORDERED.**

Date: 3/18/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

8